al. som
plu

Original

BRIAN EVANS, Individually

General Delivery

Keaau, Hawaii 96749

(617) 599-5040

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 02 2013

at ___ o'clock and 46 min. __M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BRIAN EVANS, Individually

    Plaintiff, Pro Se

                                                        CIVIL NO. 13-00272-SOM-KSC

vs.

THE MASSACHUSETTS NURSES ASSOCIATION

340 Turnpike Street

Canton, MA 02021,

                    DEFENDANT                              **SECOND AMENDED COMPLAINT**

City of Methuen

41 Pleasant Street

Methuen, MA 01844,

                    DEFENDANT

Methuen Police Department

90 Hampshire St

Methuen, MA 01844,

                    DEFENDANT

The Holy Family Hospital

70 East Street

[1]

Methuen, MA 01844,

DEFENDANT

HENRY M. NIELDS, Individually and in Official Capacity as Chief Medical Examiner

720 Albany St.

Boston, MA 02118,

DEFENDANT

OFFICE OF THE CHIEF MEDICAL EXAMINER

720 Albany St,

Boston, MA 02118

DEFENDANT

STEWARD HEALTH CARE SYSTEM

500 Boylston Street

Boston, MA 02116

DEFENDANT

DOES 1-5, DEFENDANT

JURY TRIAL DEMANDED

SECOND AMENDED COMPLAINT FOR CONSPIRACY TO COMMIT FRAUD, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, CORRUPTION

Plaintiff, Brian Evans (in Pro Se), files this First Amended Complaint against Office of The Chief Medical Examiner, Henry M. Nields (Officially and Individually), the Methuen Police Department, and The Holy Family Hospital for Conspiracy to Commit Fraud and Intentional Infliction of Emotional Distress.

**PARTIES**

[2]

Brian Evans, a Resident and Citizen of Hawaii (Exhibit C) Plaintiff has resided in Hawaii since 2009, but originally moved here in 2002, leaving only for employment.

Office of The Chief Medical Examiner, Operating and doing business in Boston, Mass

Henry M. Nields, in his Official and Individual Capacity as Chief Medical Examiner, Boston, Mass, a resident and citizen of Massachusetts

Methuen Police Department, Operating and doing business in Methuen, Massachusetts

City of Methuen, operating and doing business in Methuen, Massachusetts

Steward Health Care System, A company located in Boston, Massachusetts

## **JURISDICTION**

This Honorable Court has subject jurisdiction over this matter under Diversity, 28 USC 1332 as the matter is between parties from different states and exceeds $75,000 in its claims.

Venue is proper given Plaintiff is the only son of the victim in this case, now the administrator of her Estate, but for the purposes of this Complaint is acting in his individual capacity as the son of Helen M. Bousquet, the victim. Plaintiff is also alleging Intentional Infliction of Emotional Distress as it relates to this matter, as some elements of that infliction has only come to light recently, and within the past two months after numerous grief therapy sessions revealed itself to be so. Some damages caused to Plaintiff have occurred within the past sixty days of this filing as it relates to Plaintiff's allegations of Intentional Infliction of Emotional Distress.

Plaintiff is a resident and full time citizen of the state of Hawaii and maintains Hawaii state ID (Exhibit A). He does not live anywhere else. He is a not a citizen of anywhere else. He does not seek work anywhere

[3]

else.

The United States Supreme Court determined in Erie Railroad Co. v Tompkins (1938) that the law applied in a diversity case would be the law of whatever state in which the action is filed.

In Leblanc v. Cleveland, 248 F.3d 95 (2nd Cir. 1999), it is stated that Diversity is determined at the time that the action is filed, and on the basis of the residency of the parties at that time. A change in domicile by a party before or after that date is irrelevant, if Plaintiff's residency is indeed in question. Plaintiff is a resident and citizen of Hawaii.

Plaintiff's entire life has been based in Hawaii for more than a decade, leaving only for occasional employment as an entertainer.

Under article III of the Constitution, federal courts can hear "all cases in law and equity arising under this Constitution and laws of the United States."

### STATEMENT OF CLAIM

In an effort to protect Steward Health Care and its parent company, Cerberus Capital Management, The Chief Medical Examiner and The American Nurses Association (and the nurses whom are members and employed by Steward Health Care System and their hospitals), conspired to rid themselves of Plaintiff's mother's body as quickly as possible from the hospital after she passed away, doing so without the issuance of a death certificate which is against both state and federal law.

Co-Defendants The Office of The Chief Medical Examiner, co-Defendant Nields, Doe-Defendants, co-defendant Holy Family Hospital DOE medical examiner, and other potential DOE-defendants then manipulated her death certificate to include seven causes of death (without an autopsy having been performed) in an effort to "cover up" the claims Plaintiff is making in other lawsuits unrelated in this

[4]

court (which pertain to before she died, not after, as this current Complaint pertains to). The funeral home itself, through discovery, will testify that never in their more than fifty year career had they seen a person handled as Plaintiff's mother was, or a death certificate with so many causes of death named without an autopsy even having been performed. Co-Defendants The Methuen Police Department and the City of Methuen refused to investigate this clear violation of the law, where many of the hospital employees are relatives and friends.

Defendants, in their zeal to cover up their previous actions unrelated to this case (as again, this case refers to actions after, not before, and are therefore separate actions), never obtained any authorization from the decedents legal next of kin prior to releasing the remains of Plaintiff's mother, which is also against both state and federal law.

**PRELIMINARY STATEMENT**

1. On October 5th, 2012, Plaintiff's mother, Helen Marie Bousquet, passed away at The Holy Family Hospital at 3:15 AM (approximately).

2. The Plaintiff, in shambles at the time, was being asked various questions about what to do with his mother's remains following her passing, despite Plaintiff not at the time being the "Health Proxy," or "Next of Kin." In fact, Plaintiff was not legally able to make decisions to cease in resuscitation attempts, and her husband (who later signed off to permit Plaintiff to be Administrator of her Estate, but who wasn't at the time), was never contacted to cease in resuscitation efforts, nor asked as whether or not there should be an autopsy performed. While Plaintiff at the time said no in his distraught state, Plaintiff at the time was not legally able to make that decision. Plaintiff is only now, after this all occurred, the legal Next of Kin and Administrator of her Estate.

3. The Medical Examiner listed seven causes of death without an autopsy. The funeral home (who

intends to testify to this) then made it clear they had never, in their fifty year career, seen so many causes of death on an autopsy without an autopsy being performed. Although Plaintiff does not regret that decision for his own reasons, mostly the respect he had for his mother, he was not at that time legally able to make those decisions, and the hospital and medical examiner made no attempt to reach her husband, at the time, the legal next of kin.

4. Then, when the funeral home picked Plaintiff's mothers remains up from the hospital, they released the body without a death certificate even having been issued. This is against both state and federal law. In fact, the funeral home, again, stated this was nothing they had ever seen before in their 50 year history running a funeral home. When, three days later, the funeral home went to pick up the death certificate having received the remains three days prior, after being telephoned by the hospital that the death certificate was ready to be picked up, the funeral home was advised that they "were not releasing the remains, as her son has questions about what happened." Plaintiff did not, at that time, even have the authority to authorize the removal of the remains at the time as again, he was not Next of Kin at that time. The funeral home told the hospital upon their attempt to pick up the death certificate, "You don't understand, we've had it since last Friday." The hospital didn't even know they had released the body, doing so without the issuance of the death certificate, without consent from Plaintiff's mother's then next of kin, and then allowed the body to be cremated without any authorization from her next of kin, instead relying on the word of her son, who was under extreme emotional distress and duress. At no time was her legal next of kin contacted, or attempted to be contacted, for answers to these lawfully required questions and consent. Probate court named Plaintiff only on January 10, 2013 as Administrator of the Estate, which is needed for any of the above to be authorized by the Plaintiff. Co-Defendants, The Holy Family Hospital and Steward Health Care System, simply took advantage of a distraught son in an effort to protect their own mistakes.

## COUNT ONE

### (Conspiracy to Commit Fraud)

5.) Including the information contained above, Co-Defendants The Holy Family Hospital, Methuen Police Department, City of Methuen, and The Office of The Chief Medical Examiner, in an effort to conceal errors made in the case of Plaintiff's mother, sought to conclude resuscitation efforts by obtaining approval by her son, clearly overwhelmed and distraught, but who was not the legal next of kin. No effort to contact the next of kin (at the time) was ever made. Co-Defendants then sought to conspire with the medical examiner to "throw everything against the wall that they could," in terms of placing seven causes of death on Plaintiff's mothers death certificate without an autopsy even having been performed. Co-Defendants failed to conduct an autopsy, and never contacted Plaintiff's mother's next of kin in order to cease from doing so. Co-Defendants then released the remains to a funeral home without any written authorization to do so, and in fact didn't even know they had released said remains. Co-Defendants released the body prior to the issuance of a death certificate, which is illegal in both Massachusetts and the rest of the United States.

Plaintiff telephoned the police report alleging the remains were released prior to the issuance of a death certificate, and failed to allow Plaintiff to file a police report for this crime, nor did it even investigate the crime of releasing the remains prior to the issuance of a death certificate despite Plaintiff's request that they do so. Collectively, the co-defendants attempted to get rid of what they saw to be a series of errors leading to Plaintiff's mothers demise, and removing any evidence that such errors and negligence occurred. The City of Methuen, Massachusetts, whose Mayor has the authority to oversee in all capacities, has a duty to make certain it's police force and following, and pursuing, the law. To refuse to investigate a crime, which includes the very funeral home who could attest to all of this, is not

something the Plaintiff believes Defendants have the discretion to ignore.

## COUNT TWO

### (Intentional Infliction of Emotional Distress)

6.) Including the body of information contained above, the emotional distress caused by the Defendants in releasing his mother's remains without even a death certificate having been issued, as well as the intentional and fraudulent numerous causes of death that the funeral home itself saw no other human being come through its doors as the hospital sought to cover up their errors at the hospital, have causes Plaintiff grief, inability to sleep, function, sometimes wake up at all, and suicidal thoughts. The idea of knowing the Plaintiff's mother's remains were being so disrespected that the hospital didn't even realize they'd released it (as the funeral home will testify), has caused the Plaintiff immeasurable grief in his belief that the Plaintiff's mother was not only disrespected before and during the procedure she went to, but also when she was headed to a crematory because of these senseless and empathetic lacking, morally reprehensible individuals who were more concerned with it coming to light that they allowed her to die than how they treated her remains. In this history of the funeral home's operation, and numerous others who will testify, they have never seen seven causes of death on a death certificate without an autopsy. These were definitively listed causes, not "possible" causes, as an examiner would under normal circumstances place on a death certificate for which there was no autopsy. In all death certificates when an autopsy is not performed, the word "possible" is in front of every cause. In this case, it was absolute, according to these Defendants.

## COUNT THREE

### (CORRUPTION)

7.) In an effort to protect Steward Health Care and its parent company, Cerberus Capital Management, The Chief Medical Examiner and The American Nurses Association (and the nurses whom are members and employed by Steward Health Care System and their hospitals), conspired to rid themselves of my mother's body as quickly as possible from the hospital after she passed away, doing so without the issuance of a death certificate which is against both state and federal law. Co-Defendants The Office of The Chief Medical Examiner, co-Defendant Nields, Doe-Defendant Holy Family Hospital medical examiner, and other potential DOE-defendants then manipulated her death certificate to include seven causes of death (without an autopsy having been performed) in an effort to "cover up" the claims Plaintiff is making in other lawsuits unrelated in this court. This case is about after Plaintiff's mother passing, and are separate and apart from claims made in other lawsuits while she was alive.

## CONCLUSION

The City of Methuen, Massachusetts and The Methuen Police Department failed to investigate the criminal allegation by Plaintiff that the remains of Helen Marie Bousquet were released without the issuance of a death certificate, which is required by both federal and state law. The funeral home will confirm the hospital did exactly that. The Defendants conspired to cover up the causes of death by essentially claiming Plaintiff's mother died of "Everything."

The Holy Family Hospital and The Office of The Medical Examiner conspired to conceal allegations made in a separate lawsuit before this court by ceasing resuscitation, releasing a body without an autopsy, releasing a body without a death certificate being issued, and manipulating a death certificate to include more causes of death than a funeral home in business (and who will testify to this fact) for more than fifty years had ever seen before, all without an autopsy that no legally able individual consented to. All of the above occurred without receiving notification, permission, or otherwise, by Plaintiff's mother's

next of kin at the time. Plaintiff prays this Honorable Court will grant him the latitude of a Pro Se litigant, weighing his allegations versus any potential shortcomings as a Pro Se litigant in his filing.

**RELIEF**

For the reasons outlined in this Complaint, Plaintiff demands $25 million, plus damages to be determined per the law, to be provided to causes and charities the Plaintiff's mother most admired.

Plaintiff prays this Honorable Court will grant him the latitude of a Pro Se litigant, weighing his allegations versus any potential shortcomings as a Pro Se litigant in his filing.

Respectfully submitted:

_____

BRIAN EVANS

7/1/13

Plaintiff, Pro Se